Eau Claire Canning Co. v. Western Brokerage Co.

---

115    71
a213s 561

## Eau Claire Canning Company v. The Western Brokerage Company.

### Gen. No. 11,364.

1. CONTRACT—*relation of bought and sold notes to.* Bought and sold notes made by a broker negotiating a sale, who transmitted the bought note to the buyer and the sold note to the seller, do not constitute the contract itself, but are mere memoranda of the terms thereof, and in the absence of any entry upon the sales book of the broker, may be received as evidence of the terms of such contract; if, however, there be any material variance between such bought and sold notes, they are nullities, and the contract is not proven thereby.

2. CONTRACT—*when existence of, cannot be waived.* Where a party has once recognized the existence and validity of a contract, he cannot subsequently set up a technicality and seek to avoid its binding effect.

Action of assumpsit. Appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed June 30, 1904.

**Statement by the Court.** Appellee brought suit in assumpsit against appellant for damages arising out of the

breach of a contract on the part of the latter to sell and deliver to the former during the season of 1901, 5,000 cases of canned tomatoes. Appellant was engaged in the business of canning vegetables and fruits at Eau Claire, Michigan. Appellee was a wholesale dealer in like commodities, incorporated in the State of Iowa, and having an office in Chicago, Illinois. W. S. Knight & Co. were wholesale brokers and commission merchants in Chicago. Early in May, 1901, Reese, the secretary and manager of appellant, came to Chicago and engaged Knight & Co. to receive and to report offers for their canned goods. June 13, 1901, Knight & Co. write appellant that they can sell " one of our largest grocery houses here 2,500 cases of your tomatoes for future delivery, if you will make the price 72½ cents regular terms delivered here, guaranteeing the quality strictly standard; goods to be shipped when packed." The next day appellant refused this offer, but added, " We will make you an offer, however, of 75 cents f. o. b. at our factory in lots of 5,000 cases and 2,500 cases." June 20, 1901, Knight & Co. wrote appellant : * * * " We now have a proposition from an Iowa jobber who offers 75 cents, less 15 cents per hundred weight for 5,000 cases." Appellant replied the next day, saying : * * * " Will state that if you can secure order for 5,000 cases 3-pound tomatoes at 75 cents, we will allow 15 cents per cwt. freight." Eagle, the president of Knight & Co., June 24, took this letter to Smith, the Chicago buyer of appellee, the " Iowa jobber" referred to in the letter of June 20. As a result of their conference Eagle gave to Smith a sale ticket, dated June 24, 1901, reciting a sale to appellee for account of appellant of "5,000 cs. stand. 3 lb. tomatoes 75 f. o. b. factory, less 15c. per 100 frt. allowance. Cash, less 1½%. Pack of 1901. Shipped when packed. W. S. Knight & Co." And Smith for appellee gave to Eagle for Knight & Co. an instrument, reading: * * * " Western Bro. Co. Bought of Eau Claire Packing Co. * * * Shipping instructions : when packed—when ready to ship. Terms regular, less 1½%, cash 10 days. * * * 5,000 cases std. 3 lb. tomatoes at

75 cts. doz. f. o. b. factory, with allowance of 15 cts. cwt. on freight. Pack 1901. Usual guaranties against swells and quality. For Western Broc. Co. Brokerage: regular. Western Brokerage Co., per Dudley Smith."

The parties stipulate that the terms in said sale ticket executed by Knight & Co., "5,000 cs. stand. 3 lb. tomatoes, 75," according to the well known custom of brokers indicated 5,000 cases of standard number 3 tomatoes at seventy-five cents per dozen, each case to contain two dozen cans of tomatoes; that such cases weighed seventy pounds; that the freight allowance per dozen cans would be five and one-quarter cents; that what were the customary terms upon such sales by such brokers for cash, within ten days after delivery, is a matter upon which verbal proof may be introduced by either party, if such proof is by the court held to be competent.

The same day Knight & Co. sent the following telegram to appellant: "Letter received. Have sold five thousand tomatoes, your price terms." And on the same day Knight & Co. wrote appellant: "Replying to your favor of the 21st. We wired you today that we had sold the 5,000 cases of tomatoes for which we now enclose a sale ticket. * * * It is possible we can sell 5,000 cases more on this basis, and if you care to have us do so please let us know by return mail." The sale ticket referred to, under date of June 24, reads: "Sales by W. S. Knight & Co. for account of Eau Claire Packing Co. as per telegraphic advices. Western Brokerage Co. 5,000 cases 3 lb. tomatoes, 75 cts. F. O. B. Factory. Less 15 cts. per 100 lbs. freight allowance, cash less 1½ per cent. To be shipped when packed, pack of 1901. Season's guarantee on swells." June 26 appellant replies to last letter: * * * "Have been looking up crop prospects regarding outlook for tomatoes, and find it decidedly poor. Out of a contract of nearly 200 acres of tomatoes we will not be able to secure more than one-half that amount, and we do not feel like contracting any further futures less than 75 cts. straight f. o. b. at our factory. Should a change for the better come will let you

know." Subsequent letters from appellant show that in 1901 the tomato crop in Michigan was a failure by reason of continued drouth.

September 23, 1901, appellee wrote Knight & Co., asking when these tomatoes would be ready for shipment, as appellee desired to give proper shipping directions. This letter Knight & Co. sent the next day to appellant, with a request that they be promptly instructed "what to say to these people in the matter." These two letters were duly received by appellant, but it made no reply to either of them.

October 19, 1901, Smith went to Eau Claire to give shipping instructions, but was told by Reese that appellant had no contract with appellee for the sale of such tomatoes, and had not accepted any order from Knight & Co. for the account of appellee, and refused to carry out the contract which appellee claimed to have made with Knight & Co. as agent of appellant.

It is agreed that appellee was at all times ready, able and willing to carry out said contract; that Eagle thereafter went to Eau Claire, and appellant again denied that it had such a contract or had accepted such an order; that no tomatoes were delivered in pursuance of said negotiations; and that if appellee is entitled to recover, its damages should be assessed at $3,500.

W. H. Eagle testified that Reese was in Chicago in July and August, 1901, and said the prospects for the coming crop were bad, and he could not fill the contract of appellee. Witness advised him to go to see them and to try to make a settlement with them, which he promised to do. Over the objection and exception of appellant he said that by the custom of the Chicago market regular terms in the canned goods trade means sixty days or cash less 1½ per cent in ten days; that the phrase "terms regular" covers "the terms of payment and the regular guarantee of swells, six months;" that "swell has no connection with quality. * * * It is correct to say that the guarantee of quality is as to the standard of goods, and that a guaranty against

swells is as to the future condition of the goods;" that standard tomatoes means a red tomato and a well-filled can; and that a season's guarantee is from one packing season to another.

The custom of the Chicago market, as above set forth, is in substance testified to by Robert E. Small, William J. Tilghman and Dudley Smith, canned goods brokers. William H. Nichols, another broker, agrees with the foregoing statement, except he says that the season's guarantee of swells means but six months from the date of shipment.

R. W. Reese denies all remembrance of saying to Eagle that he could not fill the contract with appellee, or that Eagle advised witness to make a settlement with appellee if he could; denies any knowledge of the customs of the Chicago market as to times of payment or as to guaranteeing against swells or quality prior to June, 1901; cannot say that he knew or did not know of the custom when the letter of June 21st was written. He admits that all the tomatoes appellant sold on the Chicago market in the year 1901 were sold under the regular terms of that market.

The first count of the declaration sets up a sale by appellant to appellee, June 24, 1901, of 5,000 cases of standard No. 3 tomatoes, free on board cars at the factory of appellant, for the sum of seventy-five cents per dozen, less fifteen cents per cwt., less one and one-half per cent discount for cash, to be delivered within a reasonable time then next following, etc.

The second count alleges that on same date appellee, at the request of appellant through its agent and broker, W. S. Knight & Co., made a bargain to buy of it, and appellant then and there sold to appellee 5,000 cases of standard tomatoes, on the terms stated in the first count, to be delivered when the tomatoes of the year 1901 were packed. The common money counts were added. Attached to the declaration were the bought and sold notes hereinbefore referred to, and a sale ticket reading : " Chicago, June 24, '01. Sold to Western Brokerage Co., for account of Eau Claire Packing Co., Eau Claire, Mich., 5,000 cs. stand. 3 lb.

tomatoes, 75 cts. f. o. b. factory, less 15 cts. per 100 frt. allowance. Cash less 1½ per cent. Pack of 1901. Shipped when packed. W. S. Knight & Co."

Appellant interposed the general issue, and a verified plea denying the execution and delivery of the writings mentioned in the declaration and the several counts thereof.

At the close of the evidence appellee amended the declaration by adding thereto as one of the instruments sued upon, the memorandum of sale forwarded by Knight & Co. to appellant in the letter of June, 1901.

The trial judge found the issues for appellee, and assessed its damages at the sum of $3,500, and entered judgment thereon. From this judgment the present appeal was perfected.

HAMLINE, SCOTT & LORD, for appellant.

PAM, CALHOUN & GLENNON, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

If this case is to rest solely upon the bought and sold notes, then there is no contract, for they differ in at least two material respects. These notes are not the contract itself, but are memoranda only, advising the parties of the contract as made. That this is so is shown by the fact that the bought note is delivered to the buyer and the sold note to the seller. If they were intended to constitute the contract the deliveries would be reversed. But in the absence of evidence of the entry of the sale upon the sales book of the broker, the bought and sold notes may be received as evidence of the contract. If thus received, and there be any material variance between them, they are nullities, and the contract is not proven by them. Sievewright v. Archibald, 79 E. C. L. 114, 123; Suydam v. Clark, 2 Sandf. N. Y. 133; Thornton v. Kempster, 5 Taunt. 786; Peltier v. Collins, 3 Wend. 459. The note given appellee specified standard No. 3 tomatoes, while that given to Knight & Co. called for three-pound tomatoes. The evidence shows that there is a marked difference between these two grades. Further,

Eau Claire Canning Co. v. Western Brokerage Co.

the prior note says nothing as to swells; the latter contains the phrase, " Season's guarantee on swells." The preponderance of the evidence is that by the custom of the Chicago market the guaranty created by this phrase runs for twelve months. It is, therefore, apparent that the bought and sold notes do not prove a contract. On the contrary, considered by themselves, they show that the minds of these parties never met.

The correspondence between appellant and Knight & Co. prior to June 20, 1901, shows that the latter intended to sell upon the Chicago market under its custom. Indeed, all the tomatoes it sold during the season of 1901 in this market were thus disposed of. The evidence fully warranted the trial judge in holding that Reese, the secretary and business manager of appellant, knew of that custom prior to June 20, 1901, and assented to the same.

June 20 the broker wrote appellant: "We now have a proposition from an Iowa jobber, who offers seventy-five cents less fifteen cents per hundred freight for 5,000 cases. * * * Please let us know promptly whether or not you will accept this offer." Under date of June 21 appellant replied: "Referring to yours of the 20th inst. Will state that if you can secure order for 5,000 cases 3 lb. tomatoes at seventy-five cents, we will allow fifteen cents per cwt. freight."

By telegram and letter dated June 24 the broker informed appellant he had made the sale, and sends a memorandum thereof in the letter. That paper reads:

"MEMORANDUM.

CHICAGO, June 24, 1901.

Sales by                          For account of
W. S. KNIGHT & Co.          EAU CLAIRE PACKING Co.
                As per telegraphic advices.

WESTERN BROKERAGE Co.

5,000 Cases 3 lb. Tomatoes,                          75 cts.
F. O. B. Factory. Less 15 cts. per 100 lbs. freight allowance, cash less 1½ per cent. To be shipped when packed. Pack of 1901. Season's guarantee on swells."

This letter concluded with the following: "P. S. Please wire us if you will sell 5,000 more, same price." The response of appellant dated June 26 contains the following: "Out of a contract of nearly 200 acres of tomatoes we will not be able to secure more than one-half that amount, and we do not feel like contracting any farther futures less than seventy-five cents straight f. o. b. at our factory."

In July or August, 1901, Reese came to Chicago. Eagle says Reese then told him the prospect for a crop of tomatoes was bad. Eagle advised him to see appellee, who was in the city, and he promised to do so. Later on Reese told Eagle that he could not fill the contract of appellee, and was again advised to see appellee and settle with it, and he promised so to do. These conversations Reese does not deny; he contents himself by saying he does not remember them. Appellant suffered the letter of appellee concerning the delivery of the tomatoes, dated September 23, and sent by the broker to it the next day, to remain unanswered. It was not until in October, when confronted by Smith at the factory, that Reese denied the existence of any contract between the parties hereto.

The report of this sale as sent appellant June 24, 1901, in some respects differs from the wording of its acceptance of the offer as shown by its letter of June 21, and in some respects may be a harder bargain for it than was its acceptance. But it was fully informed of such differences, and it was then the duty of appellant to notify Knight & Co., or appellee, within a reasonable time, of its refusal to be bound by the sale as reported, if it did not intend to accept the same. No such word was sent to either party. On the contrary appellant impliedly, if it does not expressly, approved what its agent had done by its letter to Knight & Co., June 26, saying, "We do not feel like contracting for any *farther futures* less than 75 cts. straight." In July and in August of that year Reese recognizes the existence and validity of this contract, and, claiming to be unable to fill it, agrees to call upon appellee to see what can be done by way of settlement. It was not until four

months had elapsed, and after appellee, relying upon it, had resold the goods at an advance, that appellant denied the existence of the contract. It is but just and equitable that appellant under these circumstances should be held bound by such memorandum. To hold otherwise would enable a seller to lie hid behind some technicality until the law of supply and demand made the contract a certain profit or loss, and then to come out on the side dictated by his selfish interest. The law will not tolerate such indirection. The learned judge who heard this case decided it justly, and we affirm his finding.

The judgment of the Superior Court is affirmed.

*Affirmed.*